UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| GLOBAL DIRECT SALES, LLC, PENOBSCOT INDIAN NATION, CHRISTOPHER RUSSELL and RYAN HILL, 7824 Cessna Avenue Gaithersberg, MD 20879<br><br>　　　　　　　Plaintiffs,<br><br>　　　-v-<br><br>AARON KROWNE, individually and d/b/a THE MORTGAGE LENDER IMPLOD-O-METER and ML-IMPLODE.COM, KROWNE CONCEPTS, INC., IMPLODE-EXPLODE HEAVY INDUSTRIES, INC., JUSTIN OWINGS, KRISTA RAILEY, STREAMLINE MARKETING, INC. and LORENA LEGGETT,<br><br>　　　　　　　Defendants. | **COMPLAINT**<br><br>Case No.: |

Plaintiffs, the Penobscot Indian Nation, Global Direct Sales, LLC, Christopher Russell and Ryan Hill, by their attorneys Kantrowitz, Goldhamer and Graifman, P.C. and The Mason Law Firm, LLP, as and for their complaint against defendants, Aaron Krowne, individually and d/b/a The Mortgage Lender Implod-O-Meter and ML-Implode.com, Krowne Concepts, Inc., Implode-Explode Heavy Industries, Inc., Justin Owings, Krista Railey, Streamline Marketing, Inc. and Lorena Leggett, allege as follows:

**SUMMARY OF THE ACTION**

1.　　The Penobscot Indian Nation ("PIN") is a federally recognized Native American Government which created The Grant America Program™, a government grant program that provides low to moderate-income homebuyers with a down payment grant to be used towards the

purchase of a home. Plaintiff Global Direct Sales, LLC ("GDS") is a Maryland limited liability company. PIN and Global Direct Sales, LLC ("GDS") are parties to an Agreement to develop, organize and operate a downpayment assistance ("DPA") program wholly owned by PIN. GAP was established to help low to moderate income homebuyers realize the dream of home ownership by providing down payment assistance grants.

2. Defendants Aaron Krowne, Justin Owings, Krowne Concepts, Inc. and/or Implode-Explode Heavy Industries, Inc., own and operate the Mortgage Lender Implode-O-Meter and the website ml-implode.com (collectively the "website").

3. Beginning in or about June 2008 and continuing into August 2008, Defendant Lorena Leggett on behalf of Defendants repeatedly solicited Plaintiffs to advertise on Defendants' website. In August 2008, Plaintiffs advised Defendants that it would not advertise on Defendants' website.

4. On September 15, 2008, after Plaintiffs declined to advertise on Defendants' website, Defendants published an article on their website containing untrue and defamatory statements regarding Plaintiffs.

5. Defendant Krista Reily individual and/or through her company Defendant Streamline Marketing, Inc. wrote the untrue and defamatory article, Defendants Krowne and Owings own and control the content on the website and are responsible for the website's employee's solicitation of Plaintiffs and the retaliatory, untrue and defamatory article published on the website when Plaintiffs declined to advertise with Defendants.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action under 28 U.S.C. § 1332 (Diversity Jurisdiction) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7.  Venue is proper in the District Court for the District of Maryland pursuant to 28 U.S.C. 1391(b) and 1391 (c) in that a substantial part of the events giving rise to the claims asserted herein occurred in and are causing injury in Montgomery County, Maryland.

8.  Defendants intentionally and/or recklessly published defamatory information about Plaintiff Global Direct Sales, a Maryland company and Maryland resident, Russell and Hill, both Maryland residents and published the same via Internet within the state of Maryland, including Montgomery County and Defendants' publishing of defamatory information resulted in significant injury and harm.  Additionally, Defendants solicited Plaintiffs in Maryland and contracted Plaintiffs in Maryland.

## PARTIES

9.  Plaintiff Penobscot Indian Nation ("PIN") is a federally recognized Native American Government located on the Penobscot River in the State of Maine and as a result of the Maine Indian Claims Settlement Act, enacted by the State of Maine in chapter 732 of the Maine Public Laws of 1979, as amended by chapter 675 of the Maine Public Laws of 1981 and chapter 672 of the Maine Public Laws of 1985, and all subsequent amendments thereto, is a municipality of the State of Maine.

10. Plaintiff Global Direct Sales, LLC ("GDS") is a Maryland limited liability company with its principal place of business located at 7824 Cessna Avenue, Gaithersburg, MD 20879.

11.     Defendant Aaron Krowne is an adult individual, who, upon information and belief, resides in Atlanta Georgia, is the principal of Defendant Krowne Concepts, Inc. and a principal of Defendant Implode-Explode Heavy Industries, Inc.  Defendants Krowne, Krowne Concepts, Inc. and Implode-Explode Heavy Industries, Inc. own and operate the Mortgage Lender Implode-O-Meter and the website www.ml-implode.com (collectively the "website") and control the content contained thereon.

12.     Defendant Justin Owings is an adult individual who, upon information and belief, resides in Atlanta, Georgia, a principal of Defendant Implode-Explode Heavy Industries, Inc. is an owner of the website and controls the content contained thereon.

13.     Krista Railey is an adult individual who, upon information and belief, has an address at 1906 Oceanside Blvd #Y, Oceanside, California 92054, is a principal of Defendant Streamline Marketing, Inc. and contacted Plaintiff in the State of Maryland and wrote the untrue and defamatory article posted on the website.

14.     Defendant Lorena Leggett is an adult individual and solicited the Plaintiff via telephone calls to the State of Maryland and emails to the State of Maryland.

**FACTS**

**A.    Plaintiffs and their DPA Program**

15.     PIN is a federally recognized Native American Government located on the Penobscot River in the State of Maine.

16.     As a result of the Maine Indian Claims Settlement Act, PIN is a municipality of the State of Maine.

17. On January 24, 2007, the PIN Tribal Counsel, passed Resolution 01-24-07-01 creating the PIN Fair Housing Administration and enabling the creation of a national down payment assistance program.

18. PIN and Global Direct Sales, LLC ("GDS") are parties to an Agreement to develop, organize and operate a DPA program wholly owned by PIN.

19. The DPA program, entitled Grant America Program™ ("GAP"), is a program that provides gift funds to low-to-moderate-income families purchasing a home or first-time homebuyers across America.

20. GAP was established to help low to moderate income homebuyers realize the dream of home ownership by providing down payment assistance grants.

21. PIN wholly owns GAP, all gift funds are provided by PIN and PIN receives the enrollment fees from the sellers.

22. PIN provides a pre-existing pool of funds to be used as grants towards homebuyer's downpayments.

23. Prior to closing, the homebuyer's grant is wired to the settlement agent from a PIN bank account using funds solely owned by PIN.

24. At closing, home sellers are charged an enrollment fee for enrolling their homes in the program.

25. The funds generated from that fee go to replenish the grant fund pool and any excess is the property of PIN.

26. GAP requires that the seller certify that the sale price has not been increased to account for the seller's contribution to GAP.

27. Further, all transactions are accompanied by a real estate appraisal by a FHA certified and licensed appraiser.

28. GAP also makes additional requirements, such as buyer education, limitation on closing cost contributions and a seller certification that the price has not been increased that are more stringent than HUD requires.

29. On April 3, 2008, HUD expressly acknowledged:

> that PIN's Grant America Program™ ("GAP") meets HUD's current policies pertaining to the source of gift funds for the borrowers' required cash investment for obtaining FHA insured mortgage financing.

**B.** **Defendants' Solicitation of Advertising from Plaintiffs**

30. In or about June, 2008, Defendant Lorena Leggett on behalf of Defendants began soliciting Plaintiffs to advertise on their website.

31. Defendants affirmatively represent that they scrutinize companies considered for advertising.

32. Defendants' solicitation consisted of multiple telephone calls to Plaintiffs in the State of Maryland and email solicitations to Plaintiffs in the State of Maryland.

33. Plaintiffs' advised Defendants that they would look at the website and review potential web pages for banner placement.

34. On August 5, 2008, Defendants were still contacting Plaintiffs hoping that they would be "granted the opportunity to advertise Grant America on ml-implode."

35. Thereafter, Plaintiffs advised Defendants that they would not advertise on Defendant's website.

**C.** **Defendants False and Defamatory Publication**

36. On or about September 15, 2008, shortly after Plaintiffs advised Defendants that they would not be advertising on the Defendants' website, Defendants published an untrue and defamatory article regarding Plaintiffs.

37. The article contained multiple untrue and defamatory statements, including, but not limited to,

   a. That the Penobscot Indian Tribe's Grant America Program is a scam.

   b. That Russell had a copycat website of Ameridream.

   c. Russell and Hill treated Ameridream like their own personal piggy bank.

   d. Russell and Hill created a new venture known as the Dp Funder Program and the Owner's Alliance.  The Dp funder is another type of seller-funded down payment scam.

   e. On April 3, 2008, HUD and the Penobscot Indian Tribe executed a Stipulation to Resolve Remaining Claims and Dismiss Action which the Grant America Program website *erroneously* asserts as a "HUD approval".

   f. Not only is the Stipulation and Dismissal *not* an approval letter, it doesn't provide specific approval of seller-funded grants as the Sovereign Grant provider claims.

   g. The Stipulation and Dismissal is merely a temporary settlement which gave HUD the opportunity to publish a revised proposed rule and re-open the comment period.

   h. The seller contributions to the Grant America Program is clearly a concession that is confirmed by IRS ruling 2006-27.

   i. The PIN-FHA gift letter also confirms that it is a concession.

    j.       The Penobscot Indian Tribe isn't really providing assistance and is merely laundering the down payment for a fee.

    k.       Russell and Hill are already working on an alternative scheme through the Down Payment Grant Alliance. They intend to replace one scam with another even more complicated scam. Kind of like a convoluted down payment shell game.

    l.       The taxpayers and FHA should not be forced to sponsor continued lending abuse via seller funded down payment grant schemes.

    m.       Whether seller funded down payment grants are administered by non profit companies, for profit companies, or Sovereign Nations, they are still a scam.

38.    Defendants' statements are untrue and defamatory *per se* because they are untrue, and they injure Plaintiffs reputation, expose them to ridicule and financial injury.

39.    Additionally, Defendants falsely attributing a quote to Mr. Russell, to wit:

> That the impact to the tribe will be minimal and will not result in job losses due to the program being entirely administered by Global Direct Sales. At most, the Tribe stands to lose approximately $250,000 a year in revenue. Also, the Penobscot's manned Fair Housing Department will still be able to provide Portable Housing and Indian Block grant opportunities for their Tribal members and other types of legitimate, non seller funded assistance, for Tribal members.

40.    Defendants made these statements with malice, knowing they were false.

**D.**    **Defendants Roles In the Website and**
       **Publication of the Untrue and Defamatory Article**

41.    Defendant Aaron Krowne is the website founder, publisher, general management, editor-in-chief and owner.

42. Defendant Owings is a general management, in charge of financials, forum moderator, oversees marketing and is an owner of the website and a moderator of Defendant Railey's website.

43. Upon information and belief, in late 2007, the website's ownership passed from ownership by Krowne Concepts, Inc. to Implode-Explode Heavy Industries ("IEHI"). Defendant Krowne and Owings are principals of Defendant IEHI.

44. Upon information and belief, the website was improperly transferred from Krowne Concepts, Inc. to IEHI and Defendants' corporate entities are not following proper corporate protocols and formalities.

45. Defendant Lorena Leggett, on behalf of Defendants, solicited Plaintiff to advertise on the website from June 2008 until August 2008.

46. Defendants Krowne and Owings strive to confirm all information presented on the website and to qualify all doubtful items.

47. The commentary and content in the untrue and defamatory article are attributable to Krowne and Owings as author(s) of the website.

48. The mission of the website is transparency, education and accountability.

49. Defendant Railey has moved her blog from its own location to the website.

50. Defendant Railey contacted Plaintiff in the state of Maryland and represented herself as a reporter for the website.

51. Defendant Railey individually and/or through Defendant Streamline Marketing wrote and published the untrue and defamatory article.

52. Defendant Railey is a moderator of a forum on the website.

53.     Plaintiffs previously advertised on the "Niche Report" for which the website employee that contacted them was a sales manager.

54.     Defendants seek to preserve indefinitely their lists, discussions and linked article so that they might be impossible to forget.

55.     The Defendants control the website editorially and include any factual report or editorial which they feel is credible and/or insightful.

56.     The Defendants control the website editorially and require that all leads on companies be supported by multiple independent sources.

57.     As of 2007, the website has a core daily audience of about 100,000 visitors.

58.     On September 18, 2008, Defendants began to actively soliciting other websites to republish their untrue and defamatory article regarding the Plaintiffs.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Defamation)

52.     Plaintiffs repeat each and every allegation contained in the preceding paragraphs of the complaint as if set forth at length herein.

53.     Defendants made false and defamatory statements concerning the Plaintiffs.

59.     Defendants' false and defamatory statements were attacks on Plaintiffs' professional character and/or standing.

60.     Defendants made an unprivileged publication of the statement to third parties.

61.     Defendants' conduct was intentional, reckless and/or negligent.

62.     Plaintiffs were damaged by Defendants' conduct.

## AS AND FOR A SECOND CAUSE OF ACTION

**(Libel)**

55. Plaintiffs repeat each and every allegation contained in the preceding paragraphs of the complaint as if set forth at length herein.

56. Defendants published an untrue statement of fact.

63. Defendants published untrue statements of fact knowing they were false or with reckless disregard of the truth.

64. Defendants' publication was intentional.

57. As a result of Defendants' wrongful actions, Plaintiffs have been injured including the significant damage to their reputation.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Unfair Business Practice)**

58. Plaintiffs repeat each and every allegation contained in the preceding paragraphs of the complaint as if set forth at length herein.

59. Defendants engaged in an unfair, deceptive and fraudulent business acts by publishing false information regarding Plaintiffs in retaliation for Plaintiffs declining to advertise on Defendants' website.

65. Upon information and belief, Defendants acted with intentional oppression, fraud and/or malice in taking the actions complained of herein so as to justify an award of exemplary and punitive damages.

62. As a result of Defendants' wrongful actions, Plaintiffs have been injured and are entitled to compensatory and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Injunctive Relief)**

63. Plaintiffs repeat each and every allegation contained in the preceding paragraphs of the complaint as if set forth at length herein.

64. Defendants' conduct has improperly interfered with Plaintiffs causing injury to Plaintiffs.

65. Defendants should be permanently enjoined from making false and defamatory statements concerning the Plaintiffs.

66. The grounds for an injunction are present therein, including the fact that Plaintiffs have a likelihood of success on the merits; irreparable harm will be done if the injunction is denied; the balance of the equities is in favor of granting the injunction and Plaintiffs have been injured by Defendants' action and will continue to be injured absent the requested injunctive relief.

## JURY DEMAND

66. Plaintiffs demand a jury trial on all issues so permitted.

**WHEREFORE**, Plaintiffs demand judgment as follows:

a) On their first cause of action, awarding Plaintiffs actual and punitive damages and awarding costs, attorneys' fees and other relief;

b) On their second cause of action, awarding Plaintiffs actual and punitive damages and awarding costs, attorneys' fees and other relief;

c) On their third cause of action, awarding Plaintiffs actual and treble damages and awarding costs, attorneys' fees and other relief;

d) On their fourth cause of action, permanently enjoining Defendants from making false and defamatory statements concerning the Plaintiffs; and

e) For such other, further and different relief as the court deems just and proper.

Dated:  September 19, 2008
        Chestnut Ridge, New York

                            Yours, etc.

**THE MASON LAW FIRM, LLP**

By:  __/s/ Gary E. Mason_____
      Gary E. Mason
Attorneys for Plaintiffs
D. Md. Bar No. 15033
1225 19th Street Northwest
Washington, D.C.  20036
(202) 429-2290


**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**

By:_____
      Michael L. Braunstein
Attorneys for Plaintiffs
747 Chestnut Ridge Road
Chestnut Ridge, N.Y. 10977
(845) 356-2570