IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

CHRISTOPHER RUSSELL, et al.

:

    v.                :       Civil Action No. DKC-08-2468

:

AARON KROWNE, et al.

:

### MEMORANDUM OPINION

Presently pending and ready for resolution in this action is the motion to dismiss and to transfer filed by Defendants Aaron Krowne, Justin Owings, and Lorena Leggett.  (Paper 31)[1].  The issues are briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the motion will be granted as to Defendants Aaron Krowne, Justin Owings, and Lorena Leggett.  Plaintiffs will be directed to submit a memorandum stating their position as to whether (a) the entire case should be transferred to California or (b) the claims against those defendants should be dismissed, with the remaining claims against the remaining defendants proceeding in this court.

## I.  Background

On January 24, 2007, Plaintiff Penobscot Indian Nation ("PIN"), a federally recognized Native American government and

---

[1] It is far from clear which defendants filed the motion.  The text of the motion to dismiss itself appears to be filed only on behalf of the three defendants named above.  When counsel filed the electronic version, however, the names of additional defendants Streamline Marketing, Inc., Implode-Explode Heavy Industries, Inc., Krowne Concepts, Inc., and Krista Railey were linked to the motion.

municipality of the State of Maine, created the Grant American Program ("GAP").  GAP is a national program that gives down payment assistance funds to low to moderate income families so they can purchase a home.  Although GAP is entirely owned by PIN, Plaintiff Global Directs Sales, LLC ("GDS") operates and manages the program. GDS is a Maryland limited liability company, and its principals, Plaintiffs Christopher Russell and Ryan Hill, are residents of Maryland.  Defendant Aaron Krowne is a resident of Georgia and principal of Defendant Krowne Concepts, Inc.  Defendant Krowne and Defendant Justin Owings, a Georgia resident, are also a principals of Defendant Implode-Explode Heavy Industries, Inc. ("IEHI"). Defendants Krowne Concepts and IEHI own and operate the Mortgage Lender Implode-O-Meter and the website www.ml-implode.com.

Between June and August 2008, Defendant Lorena Leggett, on behalf of Defendant IEHI, solicited Plaintiff GDS to advertise on the website.  Leggett, who is a resident of California, contacted GDS over the phone and via e-mail.  GDS declined to advertise on ml-implode.com. Defendant Krista Railey, a California resident, is a forum-moderator on the website.  On or about September 15, 2008, Railey posted an article she had written about Plaintiffs.  While Railey was working on the article, she conducted a telephone interview of Russell.  The article contained a number of statements that Plaintiffs allege are untrue and defamatory.  Plaintiffs

contend that the article was published as retaliation because GDS declined to advertise on the ml-implode.com website.

On September 19, 2008, Plaintiffs filed a complaint against Defendants for defamation, libel, and unfair business practices. (Paper 1).  On November 18, 2008, Defendants filed an answer denying Plaintiff's allegations.  (Paper 29).  The same day, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing that Defendants Krowne, Owings, and Leggett have insufficient connections to Maryland for the court to exercise personal jurisdiction over them and that Plaintiffs failed to state a claim against these three defendants. (Paper 31).  Defendants argue alternatively that this case should be transferred to the United States District Court for the Central District of California.

## II.  Motion to Dismiss for Lack of Personal Jurisdiction

### A.   Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)(*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If jurisdiction turns on

disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676. In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

**B.  Analysis**

Defendants filed an answer to the complaint (Paper 29) and a motion to dismiss or transfer (Paper 31) on November 18, 2008. Defendants did not raise lack of personal jurisdiction as a defense in their answer, but instead filed a separate motion to dismiss for lack of personal jurisdiction. Under Fed.R.Civ.P. 12(b)(2), a defense based on lack of personal jurisdiction must be raised prior to filing a responsive pleading. However, "should the defendant file a Rule 12(b) motion simultaneously with the answer, the district court will view the motion as having preceded the answer

4

and thus as having been interposed in timely fashion." 5C Charles
Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1361
(3$^d$ ed. 2004).   Therefore, Defendants may challenge personal
jurisdiction in the motion to dismiss even in light of this
procedural misstep.

A federal district court may exercise personal jurisdiction
over a non-resident defendant "if (1) an applicable state long-arm
statute confers jurisdiction and (2) the assertion of that
jurisdiction is consistent with constitutional due process."
*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).
It has been said that Maryland's long-arm statute, Md. Code Ann.,
Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal
jurisdiction to the limits permitted by the Due Process Clause of
the Fourteenth Amendment.  *See ALS Scan, Inc. v. Digital Serv.
Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*,
537 U.S. 1105 (2003).   Yet, courts may not "simply dispense with
analysis under the long-arm statute," but rather, must interpret it
"to the limits permitted by the Due Process Clause when [they] can
do so consistently with the canons of statutory construction."
*Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6, *cert.
dismissed*, 127 S.Ct. 34 (2006).   The constitutional question is
whether the defendant purposefully established "minimum contacts"
with Maryland such that maintenance of the suit does not offend
"traditional notions of fair play and substantial justice." *Int'l

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

**1.    Maryland Long Arm Statute/Due Process**

The Maryland long-arm statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> (1)  Transacts  any  business  or performs any character of work or service in the State;
>>
>> (2)  Contracts  to  supply  .  .  . services . . . in the state;
>>
>> (3) Causes tortious injury in the State by an act or omission in the State;
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he  regularly  does  or  solicits business,  engages  in  any  other persistent course of conduct in the State or derives substantial revenue from  goods,  food,  services,  or manufactured  products  used  or consumed in the State; . . .

Md. Code Ann., Cts. & Jud. Proc., § 6-103.  Plaintiffs argue that Maryland's long-arm statute and the Due Process clause permit personal jurisdiction because: (1) the defamatory publication of the article on the Internet and unfair trade practices caused

6

injury in Maryland; (2) Defendants purposefully placed calls and sent emails to Plaintiffs located in Maryland; and (3) the effects of Defendants' tortious activity was felt in Maryland.[2]

When the contacts occur through the Internet, the plaintiff must show that the defendant did something more than merely place information on-line.   In analyzing the exercise of personal jurisdiction over a person who operates a website on the Internet, the United States Court of Appeals for the Fourth Circuit set forth the following standard in *Carefirst of Md.*, 334 F.3d at 399:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

Defendants Krowne and Owings manage the website on which the allegedly defamatory article was placed.   Neither Krowne nor Owings own property or conduct business in Maryland, or had any direct contact with Plaintiffs in Maryland or elsewhere.   The website is hosted on servers in San Diego, California and may be accessed anywhere that a person has access to the Internet, including in

---

[2]      Plaintiffs do not specifically identify which subsection of Maryland's long-arm statute applies to Defendants' conduct. *Dring v. Sullivan*, 423 F.Supp.2d 540, 544 n.3 (D.Md. 2006), suggested dismissal might be appropriate if a plaintiff fails to identify a specific Maryland statutory provision authorizing jurisdiction in either the complaint or opposition to a motion to dismiss.

Maryland.  Defendants' website is a collection of articles, thus
"the . . . site is passive, in that it merely makes information
available" on the Internet.  *Carefirst of Md.*, 334 F.3d at 399.
Defendants' mere placing information on the Internet through
operation of a passive website, without more, is insufficient to
confer personal jurisdiction in Maryland.

> [A] person who simply places information on
> the Internet does not subject himself to
> jurisdiction in each State into which the
> electronic signal is transmitted and received.
> Such passive Internet activity does not
> generally include directing electronic
> activity into the State with the manifested
> intent of engaging business or other
> interactions in the State thus creating in a
> person within the State a potential cause of
> action cognizable in courts located in the
> State.

*ALS Scan*, 293 F.3d at 714.

Furthermore, in order for the court to exercise personal
jurisdiction over Defendants Krowne and Owings as individuals, the
corporate veil of Krowne Concepts and IEHI must be pierced.  When
a court pierces the corporate veil, it must do so either to prevent
fraud or enforce a paramount equity.  *Colandrea v. Colandrea*, 42
Md.App. 421, 428 (1979).  To determine whether the corporate veil
may be pierced to prevent fraud, the court examines whether:

> (1) a material representation of a party was
> false, (2) falsity was known to that party or
> the misrepresentation was made with such
> reckless indifference to the truth as to
> impute knowledge to him, (3) the
> misrepresentation was made with the purpose to
> defraud (scienter), (4) the person justifiably

8

> relied on the misrepresentation, and (5) the
> person suffered damage directly resulting from
> the misrepresentation.

*Id.* at 428. Plaintiffs fail at the first step because they have not alleged any facts to show that Defendant Leggett made a false material representation while soliciting Plaintiffs to advertise on the website. Similarly, Plaintiffs fail to allege any facts about the interactions between Defendants Leggett, Krowne, and Owings to suggest the kind of gross business misdealing typically required to enforce a paramount equity.

Additionally, Defendant Leggett's phone calls from California to Maryland, even assuming she knew she was contacting Plaintiffs in Maryland, are insufficient to establish personal jurisdiction. *See, e.g., Cape v. von Maur,* 932 F.Supp. 124, 128 (D.Md. 1996)("Generally speaking, . . . phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process." (citing *Leather Masters (PVT) Ltd. v. Giampier Ltd.*, 836 F.Supp. 328, 331 (D.Md. 1993)).

For the same reasons, Defendants' contacts do not satisfy the due process prong of personal jurisdiction. Plaintiffs rely on the premise that Defendants purposefully directed their conduct at Maryland to support the argument that Due Process permits jurisdiction. However, Plaintiffs do not address Defendants' argument that Defendants did not know Plaintiffs resided in

Maryland.   The due process clause does not allow parties to be
haled into a jurisdiction when they had no fair warning that they
might be subject to litigation there.

### 2.   The Effects Test

Plaintiffs further argue that jurisdiction is proper based on
the "effects test" set forth in *Calder v. Jones,* 465 U.S. 783
(1984), because: (1) "the brunt of the harm will be felt in
Maryland," and (2) "Defendants purposefully directed activities
that harmed Plaintiffs in Maryland."   (Paper 42, at 6, 8).
Defendants argue that the effects test does not apply because they
did not know they were directing activities at Maryland.

The effects test requires a plaintiff establish that:

> (1) the defendant committed an intentional
> tort; (2) the plaintiff felt the brunt of the
> harm in the forum, such that the forum can be
> said to be the focal point of the harm; and
> (3) the defendant expressly aimed his tortious
> conduct at the forum, such that the forum can
> be said to be the focal point of the tortious
> activity.

*Carefirst,* 334 F.3d at 398 n.7.

In *Young v. New Haven Advocate*, 315 F.3d 256, 262-64 (4th Cir.
2002), two Connecticut based newspapers and members of their staff
posted an article on the Internet that allegedly defamed the warden
of a Virginia prison.   The warden filed an action in Virginia
against the newspapers and several staff members.   The defendants
moved to dismiss for lack of personal jurisdiction.   The district
court denied the defendants' motions to dismiss, holding that

personal jurisdiction was proper under the Virginia long-arm statute "because the defendants' Connecticut-based Internet activities constituted an act leading to an injury to the plaintiff in Virginia." *Id.* at 260. The Fourth Circuit reversed, holding that there was no personal jurisdiction over the defendants. The court explained that "the fact that [the] newspapers' websites could be accessed anywhere . . . does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience . . . rather, the newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers." The court further explained that the defendants did not intentionally direct their actions at Virginia, and declined to exercise jurisdiction, even though "the defendants were all well aware of the fact that the plaintiff was employed as a warden within the Virginia correctional system and resided in Virginia, and they also should have been aware that any harm suffered by Young . . . would primarily occur in Virginia."

Here, the connections between Defendants Krowne, Owings, and Leggett are even more tenuous than those in *Young*. Defendants assert, and Plaintiffs do not refute, that they did not know that a Maryland based company was the subject of the article. Therefore, Defendants could not have aimed the allegedly tortious conduct at Maryland. Assuming, *arguendo*, that Defendants Krowne and Owings knew when the article was published that Plaintiffs GDS,

11

Russell, and Hill were Maryland residents, the effects test does not support jurisdiction. Although in *Calder*, the Supreme Court upheld jurisdiction against a publication with a national audience, that jurisdiction was predicated on the fact that the defendants had 600,000 California subscribers, which was more than twice the amount of subscribers in any other state. Thus, a substantial portion of the defendant's audience in *Calder* was in California. Here, there is no indication that Defendants' website targets a Maryland audience, or that the website has a substantial number of Maryland readers. As noted in *Young*, 315 F.3d at 264, Defendants "could not have reasonably anticipated being haled into court in [Maryland] to answer for the truth of the statements made in their article[s]."

Plaintiffs also argue that the brunt of the harm will be felt in Maryland because Maryland is where they live and work. However, Plaintiffs have not articulated any Maryland harm beyond that general assertion. The Fourth Circuit requires plaintiffs to show some kind of substantial and articulated Maryland-based harm. Proof of residency is not enough to show that substantial harm will be felt in Maryland. In *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1996), the court noted that to allow a court to find jurisdiction based solely on where the plaintiff feels the effect of the libel "would always make jurisdiction appropriate in

a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there."

## III. Motion to Transfer

For reasons stated above, this court lacks personal jurisdiction over Defendants Krowne, Leggett, and Owings. Where venue is appropriate for some defendants but not others, as here, "the district court has wide discretion." 14D Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3827 (3$^{d}$ Ed. 2007). The court may transfer the entire case, pursuant to 28 U.S.C. § 1406(a), to another forum that would be proper for all Defendants.[3] *See In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002)(Section 1406(a) "interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district"). Alternatively, the court may dismiss Defendants Krowne, Owings, and Leggett from the action and retain the case as to the remaining Defendants. Wright & Miller § 3827. The district court has the

---

[3]     Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

sound discretion to elect either option. *See Robbins v. Ytopian Enter., Inc.*, 202 F.Supp.2d 426, 431 (D.Md. 2002). The court has authority to transfer under § 1406(a) even if it lacks personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).

Defendants assert that the entire case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To prevail on a motion to transfer venue under § 1404(a), "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty Constr. Co., Inc.,* 198 F.Supp.2d 710, 711 (D.Md. 2002)(internal quotation omitted); *see also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002); *Dicken v. United States*, 862 F.Supp. 91, 92 (D.Md. 1994). To satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship they "would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002)(citing *Helsel*, 198 F.Supp.2d at 712). Mere assertions of inconvenience or

14

hardship, without more, are insufficient to sustain a motion to dismiss or to transfer pursuant to § 1404(a).  *See Dow*, 232 F.Supp.2d at 499; *Helsel*, 198 F.Supp.2d at 712.

In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The host of convenience factors a court should consider include:

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Brown v. Stallworth*, 235 F.Supp.2d 453, 456 (D.Md. 2002)(quoting *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 622 n.4 (D.Md. 1998)(internal citations omitted)).  The decision whether to transfer venue is committed to the sound discretion of the trial court.  *See Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991); *see also Stewart*, 487 U.S. at 29

(stating that § 1404(a) intended "to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'")(*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964))).

**B.   Analysis**

Defendants argue that action should be transferred to California because the case is tightly connected to California, California law should apply, and any connection to Maryland is slight and tangential.  Defendants do not contest that Maryland is a proper venue, but rather argue that transfer is warranted for the convenience of the parties and in the interests of justice.

The initial requirement for a § 1404(a) transfer to another district is that the proposed transferee district must be a district where the action "might have been brought."  28 U.S.C. § 1404(a).  There is no doubt that this action could have been brought in the United States District Court for the Central District of California because actions founded upon diversity jurisdiction may be brought in any district where a substantial part of the events giving rise to the claim occurred.  28 U.S.C. § 1391(a)(2).  The allegedly defamatory article was researched and written in California and published to the Internet from a server in California.

16

Convenience of the witnesses is "perhaps the most important factor" to consider when analyzing a § 1404(a) motion to transfer venue. *Mamani v. Bustamante*, 547 F.Supp.2d 465, 473 (D.Md. 2008). Defendants identify three witnesses who are located in California. Conversely, Plaintiffs assert that their witnesses are located in Maryland, but do not identify potential witnesses. Because it appears that witnesses identified by each party are located in its favored jurisdiction, this factor weighs equally in favor of either forum. Similarly, both Plaintiffs and Defendants assert that documents are located in Maryland or California, respectively. Although the location of documentary and other tangible evidence can be an important factor, neither Plaintiffs nor Defendants explain how their documents are stored or what type of hardship they would face by having to transport their evidence to either forum. *See* 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3853 (3[d] ed. 2007)("[S]ince most records and documents now can be transported easily or exist in . . . electronic form, . . . their location is entitled to little weight.").

Defendants argue that the availability of process weighs in favor of transfer because there are witnesses who can be compelled to testify in California, but not in Maryland. However, the only non-party California witness Defendants identify is Randall Marquis, an employee of Defendant IEHI. Thus, Defendants have not

17

identified any potential non-party witnesses whose testimony could only be obtained through a subpoena. *Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000)(availability of process factor is neutral because a defendant can compel its own employees to testify without the need for a subpoena).

Choice-of-law principles also weigh against transfer. Although Defendants are correct that for tort claims, Maryland adheres to the *lex loci delicti commissi* (law of the place of the harm) rule, this rule is inapplicable in multi-state defamation cases. *Wells v. Liddy*, 186 F.3d 505, 527-31 (4th Cir. 1999)(applying most significant relationship rule). When publication occurs simultaneously in multiple state jurisdictions, *i.e.*, when a statement is posted on a website, the Fourth Circuit applies the most significant relationship test, which is articulated in the Second Restatement:

> (1) the rights and liabilities that arise from defamatory matter in any . . . aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

*Wells*, 186 F.3d at 528 (quoting Restatement (Second) of Conflict of Laws § 150 (1971)). Here, the state with the most significant

18

relationship to the publication is Maryland because that is where three of the Plaintiffs reside.

The court congestion convenience factor also weighs against transfer. "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, caseload per judge, and number of civil cases over three years old." *Speed Trac Tech., Inc. v. Estes Express Lines, Inc.*, 567 F.Supp.2d 799, 805 (M.D.N.C. 2008). There must be a significant statistical difference between districts for transfer to be warranted. *Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*, 473 F.Supp.2d 666, 671 (M.D.N.C. 2006). Defendants provide statistics showing that in 2007, the median time from filing to disposition was 4.8 months longer in Maryland than in California. (Paper 31, Ex. A, Turner Decl.). The discrepancy in length of time between filing and disposition is not so significant that it alone warrants transfer. On balance, the factors weigh against transfer under § 1406.

## IV.  Conclusion

For the foregoing reasons, the court finds that it lacks personal jurisdiction over Aaron Krowne, Justin Owings, and Lorena Leggett, and the case must either be dismissed as to them, or the entire case transferred to the United States District Court for the Central District of California under 28 U.S.C. § 1404. Plaintiffs

will be given an opportunity to state their position on which
action is appropriate.   If they wish to keep the case here in
Maryland, then the claims against Aaron Krowne, Justin Owings, and
Lorena Leggett will be dismissed.   Plaintiffs are directed to
submit their position no later than July 2, 2009.  A separate order
will be entered.

<pre>
                    _____/s/_____
                    DEBORAH K. CHASANOW
                    United States District Judge
</pre>