IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CHRISTOPHER M. RUSSELL, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 08-2468 |
| | : | |
| KRISTA RAILEY, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for review in this defamation case is the "motion for a default judgment, summary judgment and a permanent injunction" filed by Plaintiffs Christopher M. Russell, Ryan Hill, Global Direct Sales, LLC, and Penobscot Indian Nation. (ECF No. 109). The issues have been briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

## I. Background

### A. Factual Background

The complaint alleges the following facts, unless otherwise noted. Plaintiff Penobscot Indian Nation ("PIN") is a federally-recognized Native American Government located in Maine. It created the Grant America Program ("GAP"), which is a national program that "provides low to moderate-income homebuyers with a down payment grant to be used towards the purchase of a home." (ECF No. 1 ¶ 1). Plaintiff Global Direct

Sales, LLC ("Global Direct"), a Maryland limited liability company with its principal place of business in Maryland, entered into an agreement with PIN whereby Global Direct would "develop, organize and operate" GAP.

GAP works as follows: From a pool of funds,[1] PIN provides grants to low- to moderate-income homebuyers and first-time homebuyers to be used towards down payments. Prior to closing, the grant is wired to the settlement agent. At closing, the seller is charged an enrollment fee for enrolling their home in the program. The enrollment fee replenishes the grant fund pool and "any excess is the property of PIN." (*Id.* ¶ 25). The seller must certify that the sale price has not been increased to offset the seller's contribution to GAP. According to the complaint, GAP meets the current policies of the United States Department of Housing and Urban Development ("HUD") pertaining to the source of gift funds for a borrower's required cash investment to obtain insured mortgage financing. (*Id.* ¶ 29).

Defendant Implode-Explode Heavy Industries, Inc. ("IEHI"), and Defendant Krowne Concepts, Inc. ("Krowne Concepts"), own and operate a website called "ml-implode.com" ("the Website"). The "mission" of the Website is "transparency, education and

---

[1] The complaint does not describe the initial source of these funds, explaining only that the pool of funds was "pre-existing." (*Id.* ¶ 22).

accountability." (*Id.* ¶ 48).[2]   As principals of IEHI and Krowne Concepts, Aaron Krowne and Justin Owings control the content of the Website.   As of 2007, the Website had a core daily audience of about 100,000 visitors.

In June 2008, on behalf of the corporate Defendants, Lorena Leggett began soliciting Plaintiffs via telephone and email to advertise on the Website.   After several months, Plaintiffs finally advised the corporate Defendants that they would not advertise on the Website.   On September 15, 2008, shortly after Plaintiffs advised the corporate Defendants that they would not be advertising, the corporate Defendants published an "untrue and defamatory" article regarding Plaintiffs ("the Article") on the Website. (*Id.* ¶ 36).   Among other statements, the Article, written by Defendant Krista Railey, calls GAP a "scam," links Plaintiffs Christopher Russell and Ryan Hill to another "seller-funded down payment scam," suggests GAP is not HUD-approved, describes the seller contributions as "concessions," and accuses PIN of laundering down payments for a fee. (*Id.* ¶ 37).   On September 18, 2008, the corporate Defendants began to solicit other websites to republish the Article.

---

[2] The specific purpose of the Website was "to track what was going on in the housing sector, mortgage lending sector.   And the larger economy." (ECF No. 109-2, Krowne Dep., at 17).

**B.    Procedural Background**

On September 19, 2008, PIN, Global Direct, Mr. Russell, and Mr. Hill filed a complaint in this court based on diversity jurisdiction asserting four causes of action against seven total defendants.  (ECF No. 1).  The following claims are advanced: (1) defamation; (2) libel; (3) unfair business practice; and (4) injunctive relief.  Plaintiffs sought a preliminary injunction to halt publication of the Article (ECF No. 11), but the court denied their motion (ECF No. 28).  Defendants filed an answer on November 18, 2008.  (ECF No. 29).

Three of the original defendants, Aaron Krowne, Justin Owings, and Lorenna Leggett, were then dismissed for lack of personal jurisdiction.  (ECF Nos. 48, 49).  A fourth defendant, Streamline Marketing, Inc. ("Streamline"), was dismissed without prejudice.  (ECF Nos. 85, 86).[3]  On July 12, 2010, the court denied the remaining Defendants' special motion to dismiss pursuant to Maryland's "anti-SLAPP" statute,[4] Md. Code Ann., Cts. & Jud. Proc. § 5-807, which, in certain circumstances, protects a party's First Amendment rights when reporting on matters within the authority of a government body.  (ECF Nos. 92, 93).

---

[3] Ms. Railey is an employee of Streamline.

[4] "SLAPP" is short for "Strategic Lawsuit Against Public Participation."

4

On April 27, 2011, and May 9, 2011, counsel for IEHI and Krowne Concepts filed motions to withdraw as attorneys (ECF Nos. 98, 101), which the court granted on May 31, 2011 (ECF No. 104). In its letter-order granting the withdrawal, the court informed IEHI and Krowne Concepts that they must be represented by new counsel; otherwise, they would be subject to default.  (*Id.*). When IEHI and Krowne Concepts failed to respond appropriately within the requisite time period, their default was entered. (ECF No. 107).

On September 28, 2011, Plaintiffs filed the pending motion. (ECF No. 109).  Defendants have not opposed it.[5]

## II. Default Judgment

Plaintiffs first move for default judgment on all counts as to IEHI and Krowne Concepts.  (ECF No. 109-8, at 7).  Despite the styling of their motion, however, Plaintiffs do not actually seek default judgment.  Rather, they seek only a determination of the issue of liability upon default, as they specifically refrain from seeking a determination of damages on the current record.  (*See id.* at 1, 7).  They seek a hearing on damages after default.

---

[5] Aaron Krowne has filed several documents that may have been an attempt to respond on behalf of the corporate Defendants.  (*See* ECF Nos. 105, 110).  As corporate entities, however, IEHI and Krowne Concepts can only be represented by counsel, *see* Local Rule 101.1.a, which precludes consideration of Mr. Krowne's filings.

### A.   Defendants' Liability on Default

When considering a motion for default judgment, the court takes all well-pleaded factual allegations in the complaint as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). A default, however, is not "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," and the defendant is not held to "admit conclusions of law." *Id.* (citation omitted); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688, at 60–61 (3[d] ed. 1998) ("[L]iability is not deemed established simply because of the default, and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." (footnotes omitted)). For that reason, the court must evaluate whether Plaintiffs have alleged a legitimate cause of action before awarding default judgment in their favor. Wright et al., *supra*, § 2688, at 63.

In the Fourth Circuit, several recent district court opinions analyzing default judgments have applied the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), when determining whether allegations within the complaint are "well-pleaded." *E.g.*, *Balt. Line Handling Co. v. Brophy*, 771 F.Supp.2d 531, 544 (D.Md. 2011); *Bogopa Serv. Corp.*

*v. Shulga*, No. 3:08cv365, 2009 WL 1628881, at *1-2 (W.D.N.C. June 10, 2009).   Using the principles articulated in *Iqbal* and *Twombly*, those cases have concluded that where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pleaded and, even on default judgment, relief should be denied.   *See Balt. Line Handling Co.*, 771 F.Supp.2d at 544 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

### 1.   Defamation and Libel (Counts One and Two)

As an initial matter, Counts One and Two are duplicative of each other.   Indeed, libel is simply a "branch[]" of the tort of defamation.   *Lake Shore Investors v. Rite Aid Corp.*, 67 Md.App. 743, 752 (1986); *see also Adam v. Wells Fargo Bank, N.A.*, No. ELH-09-2387, 2011 WL 3841547, at *16 n.23 (D.Md. Aug. 26, 2011) ("The tort of defamation includes both libel (written defamation) and slander (oral defamation).").   Moreover, there are no separate facts alleged in support of either count to suggest that they were intended to cover different conduct by the Defendants.   Counts One and Two will thus be analyzed as asserting a single cause of action.

To state a claim for defamation in Maryland,[6] a plaintiff must plead the following four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007).

As to the first element, "[a] defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* at 198-99 (internal quotations omitted). More specifically, a defamatory statement is defamatory *per se* "[w]here the words themselves impute the defamatory character . . . , no innuendo — no allegation or proof of extrinsic facts — is necessary." *See Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009).[7] For example, "[a] statement which disparages the business reputation of a plaintiff is one of the categories traditionally considered to be defamation *per se*." *S. Volkswagen, Inc. v. Centrix Fin.,*

---

[6] No party suggests that another state's law applies.

[7] All other defamatory statements are *per quod*. *Id.* As will be seen, Plaintiffs state a claim for defamation on the basis of *per se* defamatory statements; therefore, the court need not address any potential *per quod* defamatory statements in the Article. In any event, to maintain an action *per quod*, Plaintiffs must sufficiently allege actual damages, *see Samuels v. Tschechtelin*, 135 Md.App. 483, 549 (2000), which they do not do.

*LLC*, 357 F.Supp.2d 837, 843 (D.Md. 2005).  Statements imputing criminal behavior have also been found to be defamatory *per se*. *See Shapiro v. Massengill*, 105 Md.App. 743, 775 (1995) (noting that statements that the plaintiff was "evasive, secretive, dishonest, dishonorable, and perhaps even a criminal" were defamatory *per se*); *see also S. Volkswagen*, 357 F.Supp.2d at 842-43 (holding that it was defamatory *per se* for the defendant to tell plaintiff's competitor that plaintiff was a "fraud and being investigated for fraud crimes with banks and customers"); *Carter v. Aramark Sports & Entm't Servs., Inc.*, 153 Md.App. 210, 238 (2003) ("[T]he allegation that a person is a thief constitutes defamation *per se*.").  Here, the complaint certainly alleges communication to a third person because the Article was published on the Website.  (ECF No. 1 ¶ 36).  Moreover, of the thirteen statements from the Article that Plaintiffs allege are defamatory, four are defamatory *per se*:

> a.  That the Penobscot Indian Tribe's Grant America Program is a scam.
> . . . .
> d.  Russell and Hill created a new venture known as the Dp Funder Program and the Owner's Alliance.  The Dp funder is another type of seller-funded down payment scam.
> . . . .
> j.  The Penobscot Indian Tribe isn't really providing assistance and is merely laundering the down payment for a fee.
> k.  Russell and Hill are already working on an alternative scheme through the Down Payment Grant Alliance.  They intend to

> replace one scam with another even more
> complicated scam. Kind of like a convoluted
> down payment shell game.

(ECF No. 1 ¶ 37). Indeed, these statements, when taken together and considered in context, "disparage the business reputation" of Plaintiffs, and, especially the statement that PIN is "laundering" the down payments in the GAP program, impute criminal behavior on the part of Plaintiffs.[8] Thus, assuming these statements were actually contained in the published Article, Plaintiffs sufficiently allege the first element of defamation.

As to the second element of defamation, the complaint not only alleges that these statements from the Article are "untrue" (ECF No. 1 ¶ 37), it also sets forth a variety of facts that, when taken in the light most favorable to Plaintiffs, tend to show that GAP is a legitimate, government-approved program (*id.*

---

[8] Some courts outside of Maryland when analyzing their jurisdictions' similarly-defined law of defamation have held that calling an enterprise a "scam" is not necessarily defamatory because of the vagueness of the facts underlying such an accusation. *See*, e.g., *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987). Unlike in those cases, however, here, the word "scam" implies criminal activity. Thus, these statements from the Article are defamatory *per se*. *See Macklem v. Pearl*, No. 10 C 830, 2011 WL 2200037, at *4 (N.D.Ill. May 31, 2011) (holding that a statement that the SEC was investigating the plaintiff as a "scam artist" and that he "would be subject to more than a slap on his hand," implying the commission of a crime, was defamatory *per se*).

¶¶ 15-29).   Falsity of the above statements is therefore properly alleged.

As to the third element of defamation, fault can be based on either negligence or actual malice. *Samuels v. Tschechtelin*, 135 Md.App. 483, 544 (2000).   "[A]ctual malice is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity."   *Id.*   Moreover, if a plaintiff can demonstrate that a defendant acted with actual malice when publishing a *per se* defamatory statement, harm is presumed for purposes of the fourth element of defamation.   *See S. Volkswagen, Inc.*, 357 F.Supp.2d at 843-44; *Samuels*, 135 Md.App. at 549-50.   Here, Plaintiffs allege that "Defendants made these statements with malice, knowing they were false" (ECF No. 1 ¶ 40) and that "Defendants published untrue statements of fact knowing they were false or with reckless disregard of the truth" (*id.* ¶ 63), which, albeit spare, has been held by a court in this district to constitute well-pleaded allegations of actual malice, *see S. Volkswagen, Inc.*, 357 F.Supp.2d at 844 ("An averment of knowledge that the statement was false is a sufficient

allegation of actual malice.").[9]  The complaint further supports the inference that the corporate Defendants were aware of the Article's falsity or were reckless with regard to its truth by alleging that the corporate Defendants owned the Website during the relevant time period and that all Defendants "control the [W]ebsite editorially." (ECF No. 1 ¶¶ 43, 55-56).  In addition, Mr. Krowne and Mr. Owings, who are both alleged to be principals of the corporate Defendants, "strive to confirm all information presented on the website and to qualify all doubtful items." (*Id.* ¶ 46).  Assuming the truth of these allegations and taking them in the light most favorable to Plaintiffs, these allegations show actual malice, at least as far as fault is concerned.  Moreover, because at least some of the statements in the Article are *per se* defamatory, harm is presumed. Accordingly, both the third and the fourth elements of defamation are adequately alleged.

---

[9] Although *Southern Volkswagen* was decided before *Iqbal* and *Twombly*, its holding is still persuasive.  Indeed, as the Court of Special Appeals of Maryland noted with respect to defamation, "[w]hen the pleader alleges [malice], what more can he charge?" *Wineholt v. Westinghouse Electric Corp.*, 59 Md.App. 443, 450 (1984).  The "state of mind of the defamer" may be alleged generally.  *See id.; see also* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

In sum, the allegations in the complaint, taken as true upon entry of default, would establish the corporate Defendants' liability for defamation.

### 2.   Unfair Business Practice (Count Three)

Plaintiffs style Count Three as "Unfair Business Practice," but they do not otherwise identify any statutory or common-law cause of action in this count.   At best, they allege that "Defendants engaged in an unfair, deceptive and fraudulent business act[] be publishing false information regarding Plaintiffs in retaliation for Plaintiffs declining to advertise on Defendants' website."   (ECF No. 1 ¶ 59).   Without more, however, the court cannot discern what, if any, claim Plaintiffs are asserting, let alone whether such claim is viably pleaded. Therefore, liability under this count would not be established. *See Dickson v. Cohn, Goldberg & Deutsch Law Firm*, No. PJM 09-937, 2009 WL 4730986, at *2 (D.Md. Dec. 7, 2009) (dismissing a count labeled "Unfair Business Practices - Maryland Business & Professional Code" for failure to state a claim because it only included a "vague reference to the Maryland Business & Professional Code" and "set[] forth no discernible cause of action").

### 3.   Injunctive Relief (Count Four)

Count Four also does not set forth any cause of action. "An injunction [is a] remed[y], not [an] independent cause[] of

action." *Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc.*, 704 F.Supp.2d 499, 521 (D.Md. 2010); *accord Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R. 149, 161 n.6 (D.Md. 2011). This requested relief may or may not be available to Plaintiffs, but insofar as a determination of liability is concerned, there is nothing to be decided here.

**B.    The *Frow* Doctrine**

Although the complaint sufficiently shows the corporate Defendants' liability as to defamation, entry of default judgment is inappropriate because Ms. Railey's default has not been entered.    Judge Hollander addressed a similar situation involving an entry of default against fewer than all defendants in *Arbor Care Tree Experts, Inc. v. Arbor Care Tree Experts & Outdoor Services*, No. ELH-10-1008, 2011 WL 219636 (D.Md. Jan. 21, 2011).  She explained:

> The touchstone case regarding entry of default judgment against a single defendant in a multiple-defendant action is *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872). There, the Supreme Court held that, ordinarily, in order to avoid the risk of inconsistent judgments in a multi-defendant case, the proper course "is simply to enter a default" against the defaulting party, and to "proceed with the cause upon the answers of the other defendants."    *Id.* at 554. *See also* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2690, at 73 (3d ed. 1998) ("As a general rule ..., when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the

14

> matter has been adjudicated with regard to
> all defendants, or all defendants have de-
> faulted."). *Accord United States ex rel.*
> *Hudson v. Peerless Ins. Co.*, 374 F.2d 942,
> 944 (4th Cir.1967); *Carter v. Rosenberg*,
> Civ. No. AMD-04-759, 2005 WL 782923, at *4
> (D.Md. Apr.7, 2005).

*Id.* at *1.  The United States Court of Appeals for the Fourth

Circuit expanded the holding in *Frow*:

> Although *Frow* was a case of joint liability,
> we think the procedure established for
> multiple defendants by Rule 54(b) is
> strikingly similar and applicable not only
> to situations of joint liability but to
> those where the liability is joint and/or
> several. . . .
>     . . . Where the liability is joint and
> several or closely interrelated and a
> defending party establishes that plaintiff
> has no cause of action or present right of
> recovery, this defense generally inures also
> to the benefit of a defaulting defendant . .
> . .

*United States ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942,

944-45 (4th Cir. 1967) (internal citations and quotations

omitted).

In this case, Count One is asserted against all Defendants;

no distinction is made between Ms. Railey and the corporate

Defendants in terms of separate grounds for liability.  Given

Ms. Railey's role in the alleged defamation as the author of the

Article, her potential liability is certainly "closely

interrelated" with IEHI and Krowne Concepts, who owned the

Website.  As *Frow* warns, entering default judgment for the

15

corporate Defendants at this stage would risk possible inconsistent rulings. Therefore, unless and until the issues regarding Ms. Railey's involvement in the alleged defamation are resolved, entry of default judgment will be denied, and no hearing on damages will be granted.

## III. Summary Judgment

Because Plaintiffs have set forth sufficient allegations showing the corporate Defendants' liability for defamation upon default, their motion for summary judgment as to liability on Counts One and Two need not be addressed. Accordingly, that motion will be denied as moot.

## IV. Conclusion

For the foregoing reasons, the "motion for a default judgment, summary judgment and a permanent injunction" filed by Plaintiffs will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

16